Good morning, your honors. May it please the court. Rebecca Jones appearing on behalf of appellant Tramond Davis. I would like to reserve five minutes for rebuttal. Tramond Davis was convicted of participating in a wide-ranging international bank fraud conspiracy because he opened his first ever bank account, allowed someone he didn't know very well to deposit nearly $1,000 in the account, withdrew the money the next day, and was paid $400 for his efforts. No evidence showed he knew the money was deposited via an international fraud scheme. No evidence showed he knew the money was illegally obtained. What does the evidence show about the deposit? There was a report or something of the deposit, was that all? I'm sorry, say that again. What was the evidence about the deposit? It came on a wire or something? There were two pieces of the bank generated a bank statement. So this was about 20 days after and it showed that the money came from somebody. I think I believe it was some woman. I believe we included that in the excerpts of record. Some woman in some unknown place. And then there was a stipulation by the parties that the money was fraudulently placed into the account. But that stipulation did not include any agreement that Mr. Davis knew the money was fraudulently placed in the account. Does that answer your question? Yes, I think so. Okay. Mr. Davis was the only defendant in this case who, when he opened his bank account, used his true name, his true address, and his true social security number. He was only 18 years old at the time. He had no sophistication about banking and he had no reason to suspect that he was part of any kind of a fraud. The prosecution here failed to show how anything about this case was demonstrably, oh, excuse me, about anything about how Mr. Davis got involved in this case was demonstrably false. And that was their primary theory at trial, that he gave such an incredible explanation of how and why he would open this bank account that he had to have been guilty of participating in the bank fraud. The jury in this case struggled mightily with this verdict. In fact, in the very first day of deliberations, they sent out notes saying that they needed to rehear evidence about Mr. Davis and about one of the defendants who was ultimately acquitted. After two more days of deliberations, they sent out a note saying that they were hung, that they were deadlocked on Mr. Davis and on the defendant who was acquitted. And after they were told to go back and deliberate some more, they eventually convicted Mr. Davis. The defendant who was acquitted actually had more inculpatory evidence against him. He used a false address to open his account. The prosecution actually brought in witnesses to show that the address that Defendant Westbrooks, the acquitted defendant, the address that he put on his bank account was an address for a juvenile delinquency home in Los Angeles where Mr. Westbrooks had never lived. Mr. Westbrooks possibly used a false Social Security number, although it's hard to tell whether there was a clerical error in transposing one of the numbers or whether he actually gave a false number. And he told agents after he was arrested that the whole situation felt weird to him and he knew people who had done this before. That's even more evidence than they had against Mr. Davis, yet the jury acquitted Mr. Westbrooks and convicted Mr. Davis. This case is one of those reasons why we have appellate courts. The jury here got it wrong. There simply was insufficient evidence to show that Mr. Davis knowingly and intentionally joined an international bank fraud scheme, and this court should reverse his conviction. Was that argument that he was part of just a smaller conspiracy with the one person who approached him, was that made in the trial court? No. So we're looking at what standard of review are we using here? As I explained in my reply brief, to the extent that the proof may have shown a much smaller and different conspiracy than that's charged, if you're having to deal with that at a plain error level, if the court still determines that there is insufficient evidence, you don't – there's not much of a distinction between a regular standard of review and a plain error standard of review. There's either evidence to show that he was participating and joined in the charged conspiracy or there wasn't. So it shouldn't really affect this Court's analysis. The indictment in this case charged only one conspiracy. One overarching. And it was the big, overarching international conspiracy. Correct. And there were no sub-conspiracies alleged. There certainly were sub – sub parts, like you see in a Kodiakos conspiracy, that, you know, Lucas was at the very top and then he had all his little spokes out there recruiting people to participate in the scheme. But there was absolutely – there actually wasn't even any evidence that the person who recruited Mr. Davis was the same person who texted his bank account information to Lucas or anything else. There was just this big void of evidence regarding Mr. Davis. You know, he's involved in a financial transaction that looks funny, therefore find him guilty. Was there a motion to sever? There was not. Not on behalf of Mr. Davis. Probably should have been, but there was not. Yeah, I wonder what evidence there would have been if he had been tried alone. He wouldn't have been. I mean, there's no way – because they would have had to keep out tons of the stuff, including the evidentiary issues, which I raised in my brief, but I don't really want to go into any further detail this morning, because I really think – I really think this case is one of the weakest cases in terms of the governance evidence I have ever seen in my 20 years of practice. It's just one of the weakest. And I don't – you know, obviously, we would rather have Mr. Davis get into trial based on evidentiary error, but – than get no relief in this Court, but I really think there's just nothing. And if he had been tried by himself, so much of that evidence would have come in – would not have come in. That horrible first phone call that I noted in my brief where Lucas is just carrying on about engaging in all kinds of other bad frauds and schemes against other people and using foul and disgusting language wouldn't have come in. There was no reason to bring that in against Mr. Davis. And a jury would have disposed of this case in 15 minutes and come back with a not guilty. I don't – Go back to one of Judge Wardlow's questions. What if the – could the jury have convicted him of conspiring with the individual or one individual, and that being a conspiracy between two people, if that was all that would have proven as to him? I don't believe so. There's a little – the case law isn't as clear as I would like it to be. I know that the government suggested in its brief that technically that might be something of a lesser included offense. But there's case law that I cited in my brief saying when the government fails to prove the charged conspiracy, that is a sufficiency of the evidence problem and it is a failure of proof of constitutional magnitude that requires reversal. So even if – potentially if Mr. Davis' attorney had asked for a lesser included offense instruction, and I did some research on this in the last couple of days and I can't even find sort of many sub-conspiracies as lessers, but theoretically if they had a strategic reason to really want him to be convicted of a smaller mini-conspiracy that was part of it, there's a remote possibility that would be acceptable, but I can't find any case law saying you can convict somebody of a mini-conspiracy that's part of the larger conspiracy. And again, even this Court's precedent says if it's a different conspiracy than the charged conspiracy, it's a failure of proof. And no one – nobody suggested to the jury that there could be a conviction based on a lesser mini-conspiracy? No one suggested that, neither the government nor defense counsel at trial. Thank you, Your Honor. Thank you. May it please the Court, Ronald Chang for the United States. The two main issues that were addressed in defense's oral argument go to sufficiency as well as the multiple conspiracies issue. With regard to sufficiency, we would submit that under the Jackson-Virginia standard, as more recently described in this Court's Neville's opinion, that the evidence viewed in the light most favorably in favor of the conviction does support any reasonable trier of fact finding the defendant guilty. The defense notes that there's no tie to an international phishing conspiracy. The conspiracy charge certainly charges a wide-ranging set of acts against a number of actors, most primarily defendants Lucas, Mersey, and Clark, who were shown to have direct contact with the individuals in Egypt. There was evidence that showed that the transfers were directly tied to the phishing activity in Egypt. The issue here is that the indictment charged the defendant with being at the bottom rung of the conspiracy. He was a so-called runner or a drop. Like so many of the defendants in the case, his job was to simply open a bank account to convey that information to the person with him. That information made its way to defendants Lucas, Mersey, or Clark. The information was transferred to Egypt. The money was then transferred by individuals in Egypt who had phished into victim bank accounts, and the money was then transferred into the drop account, and the drop, in this case, defendant Davis, then made a withdrawal. The conduct, as demonstrated by the bank statement, shows that defendant, in fact, fulfilled that role and that the transaction was done quickly. In this case, the account was opened on day one, and on day two, the $1,000 that had been transferred in was withdrawn, and even beyond that, the defendant withdrew the $20 of the $25 used to open up the account. So the account had no substance at all except to effectuate the scheme. As defendant Mersey said in one of the Internet messaging chats, finding the accounts is easy, getting the drops is hard. And so defendant's role was to go into that bank where he had no bank account and to open up the account. We would submit that as far as sufficiency goes, there was the actual transaction itself, the scheme of which the defendant was aware that there would be a transfer into the account and that this would happen quickly because he was the one who both opened the account and took the money out, as well as the defendant's own statement, which the jury must be presumed to have discredited because the statement was exculpatory. The defendant said that an individual he met simply told him he was from out of town, had no way of getting at his money, showed a card that looked a little bit funny to Mr. Davis. Davis then went to the bank, opened up the account, conveyed the information, and then the next day it was taken to another bank branch, different from the one where he opened up the account, and then withdrew the money. And for all of that, he got a, quote, unquote, Russian money, that is 400 of the $1,000 that was transferred. As far as the multiple conspiracies is concerned, again, we would note that the proof does not have to show that he was aware of an international conspiracy that involved phishing activity from Egypt. He was aware, based upon the evidence that was shown, that he was engaged in an activity where he was going to get money very quickly, something for nothing, and for the trouble of opening a bank account and going to a branch, he would get $400. With regard to multiple conspiracies, this was not an issue that was raised in the district court. It was not argued to the jury. The argument was simply defendant was not involved in this conspiracy. The evidence is thin. Therefore, you should acquit. What does he have to know? What did you have to prove about his knowledge or intent? We had to show that there was this, first of all, there was actually a conspiracy that existed in order to pull money out of the account, and to show that he agreed to become a part of it and had the intent to defraud. When you say he had agreed to become a part of it, how much does he have to know about what he's doing? We believe that he, based upon the evidence in the record, he knew that there was another individual who was able to get money transferred in, and he knew that it wasn't just this individual alone, because if it was just a matter of, I've got some money that I need to put into your bank account, he could have done it along with Mr. Davis, and Mr. Davis could have pulled out the money. Instead, it was, I'll get back in touch with you. Next day, he gets a call. The money's in the account. So there's at least somebody else involved that's putting the money in, at least the evidence viewed most favorably towards the verdict is concerned. So the defendant is aware that there are others involved. We also have objective evidence that this person with him was also involved in other activity. In our Exhibit 6, which is in the excerpt, there is not only the Internet message, excuse me, the text message from a Las Vegas 702 number that transmits Mr. Davis' bank account information to Mr. Lucas. There's also text information that transmits the account information from Ms. DuBose, who's also in Las Vegas, over to Mr. Davis. We also introduced her bank account information, same kind of scenario. In fact, the transfer and the withdrawal is all done on the same day. So objectively, there is a showing that there's an individual. We don't know who that is, but we know that that person is using the same telephone number and is transferring information to Mr. Lucas on the one hand, and then on the other hand, the respective drops are flowing on money. But what does that have to do with Davis? Because the money, excuse me, the telephone number that is used to transfer Ms. DuBose's information is the same telephone number that Mr. Davis transmits. Now, I'm not necessarily saying that Mr. Davis knows that Ms. DuBose is out there, but what Mr. Davis does know is that this appears to be something that works, because he goes into the bank the next day and the money's there. That would indicate to him that this is something that's worked. And so he would have knowledge that the person with him knows what he's doing, is able to effectuate the fraud, and is working with somebody else. And that would be enough to show the connection to the fraud. Now, I did want to add the point that even though the argument was not made, the defendant had the opportunity to make that argument because there was a multiple conspiracies instruction. At our excerpt of record, page 63, the court gave this court's standard instruction on multiple conspiracies, and the defense, really none of the defendants who were similarly situated to Mr. Davis, chose to make that multiple conspiracies argument. I did want to address the point raised by Judge Reinhart, that is, whether a jury could convict of a conspiracy even though the proof was only that the individual conspired with one defendant. First of all, we believe that the evidence shows the defendant was aware that there were others involved. But putting that aside, I'm not sure we can necessarily take on the proposition that proof of only a lesser conspiracy necessarily shows proof of the entire conspiracy. But I believe that under the miscarriage of justice standard or under plain error review, that's a factor that this court can consider in this context in assessing either whether the error is plain or whether the error affected substantial rights or whether the court should intervene, or on the other hand, whether there's miscarriage of justice. In this case, the defendant was held liable only for what he did. He was not on the hook for everything that the person with him had done with Ms. DuBose and any of the other individuals that he might have dealt with. I guess the question is, had he been tried alone? Was there sufficient evidence to convict him at all? We believe so because we couldn't have just put in the bank statement and his statement to the officer. We still had to show that there was a scheme going on. We had to show where that money came from. And so it was necessary to provide the background. Maybe we couldn't put in every single telephone call and every single internet message that was found, and Ms. Z could not have testified in as wide a scope as she did, but there had to be some evidence to show that this scheme could work. And so it was necessary to put in, for instance, that there were at least several other transactions where the money came in, the money was pulled out. There were these communications that showed that in addition to getting drops, it was a necessary part of the scheme that there had to be timing. There had to be a short frame of time in which this scheme could work. Otherwise, the bank would catch on, would reverse the transfer, the drops would not be able to withdraw the money, what have you. But that would have been necessary as part of the proof of the scheme. I'm not suggesting that this would have been a six-week trial against Mr. Davis, but there would have had to be something else. For those reasons, we believe that there was not, that there should not be reversal on the basis of multiple conspiracies. We would only note briefly that with regard to the cases cited in the defendant's reply, Pearlstein and Barnard, these present different situations. Pearlstein was a sales scheme, if you will, involving individual salesmen who were brought in to sell pens. There was an ostensible, legitimate purpose for the salesman getting involved, different from this situation where someone is brought in on a one-time only basis to pull out $1,000 and get $400 for his trouble. Even Barnard. I think that as for multiple conspiracies, opposing counsel made a point which seems right to me, and that is that part of a defense based on multiple conspiracies would be that, no, he wasn't guilty of this big, great big conspiracy. He was guilty of some lesser conspiracy. It's just another way of saying there was insufficient evidence on the big conspiracy. And that, if that really is the argument, then that was the argument, in a way, made by Mr. Davis and the other defendants. In other words, there was this big, it's really a variant of that. There was this big conspiracy, and I had nothing to do with it. And each of those defendants chose to make what they believed was the stronger argument. And both at the time and in retrospect, that probably was the strongest argument, at least to make to a jury. But in almost all cases except for Mr. Westbrooks, the jury found that there was sufficient evidence. Granted, in each case probably for different reasons. In the other cases, were they only single transactions? In Ms. DeVos' single transaction, Mr. Westbrooks, and I do want to talk about that, a single transaction. Mr. Fuller, there were two accounts, and we introduced evidence of another one where the transaction didn't go through. And then for Ms. Settle, there were two or three other transactions. So obviously, the drops are differently situated. But the closest one is Ms. DeVos, where there was just a single transaction. What was the difference with Westbrooks? With Westbrooks, Mr. Westbrooks, excuse me, in a statement, said to the agent, well, I got this money, and I almost immediately paid back a large part of it. And for these reasons, defense counsel argued, it wasn't really a case where the government could show adequate intent. Now, at the time, I would have certainly thought differently, and it's hard to unwrap exactly what the jury was focused on because of the multiple defendants. The difference was the statements they made to the police. The statements were different. The statements were all different. Mr. Davis had this thing about meeting rich at the swap meet. How old was Mr. Westbrooks? He was a little bit older, but in his 20s as well. Had he had a bank account before? No, he opened up a bank account. They all opened up bank accounts. I know, but had he previously had experience with having bank accounts? I don't believe that that had come into play. My recollection of Mr. Westbrooks' situation was he was living in an apartment complex. He met an individual who said, hey, you seem to be in a little bit of trouble. I can help you get a little bit of money. It was somebody he had met in a neighboring casino. They opened up a bank account. He gets the money out. He realizes he doesn't need the entire 1,000, so he gives a large part of it to the individual. I don't believe Mr. Westbrooks said, although it's been some time, I don't believe he said, I got $400 for doing this. I don't believe he made any statement as to that at all. But in any case, I don't think this is a situation where there's one defendant, the jury spends a long period of time, asks for specific pieces of evidence, and from that we can reconstruct exactly what they were focused on. There were multiple defendants. Ms. Murzy clearly was the bulk of our presentation. But in addition, the jury had spent some time addressing Mr. Fuller, Mr. Westbrooks, and Mr. Davis towards the end of the trial. And so I don't believe there's a lot that can be gleaned from the deliberations in this case. We would submit that there was sufficient evidence under the Neville standard and therefore would ask the Court to affirm. Thank you, Judge. Can I ask you one question? Yes. The Neville standard. The Neville standard is you can draw reasonable inferences, and then if you have those reasonable inferences, they have to lead to the fact that they could, taken together with the other evidence, support a finding of guilt beyond a reasonable doubt. Is that right? Yes, that's right. So the inference would have to lead the fact finder to show that the government had proved guilt beyond a reasonable doubt. That once all the inferences are drawn in favor of the verdict, that any reasonable trier of fact can find the essential elements of the offense beyond a reasonable doubt. I don't believe Neville says that whether you separate out those facts or those things that are found by inference. You take them all together. With the inference and the facts. And the inference has to be a reasonable inference that all of that together proves guilt beyond a reasonable doubt. A reasonable fact finder could find that. A reasonable fact finder could find that all of the evidence viewed in the light most favorably to the government would support a finding of guilt. Beyond a reasonable doubt. Beyond a reasonable doubt, of course. Absolutely. Thank you. Your Honors, the government said fairly early in their argument that Defendant Mersey, against whom there was quite a bit of evidence, told Lucas at some point getting the bank accounts is easy, getting the drafts is hard. That's why they have to dupe people like Mr. Davis into participating in their scheme, because people aren't going to take that kind of risk unless they're being tricked. And the evidence here showed that he was tricked into doing things that facilitated the scheme without knowing what exactly was going on. Judge Canby, I don't think the government answered your question about what they have to prove in terms of Mr. Davis' knowledge and intent. They have to prove that Mr. Davis joined a specific conspiracy. Conspiracy is a specific intent crime. You can't just say someone agreed to commit a crime. It's a specific intent crime, and this was a specific fraud conspiracy in this case, and the government failed to prove that Mr. Davis knew that there was a larger conspiracy or intended to join a larger conspiracy. When the government tried to explain what it believes Mr. Davis knew, the government continues, both during oral argument and in the briefs, to sort of confuse what sort of the global all-knower of fact above us knows and what the government knew, which is, yes, there's interconnections between all of these people, and what Mr. Davis actually knew. Mr. Davis didn't have access to any of this information showing his account numbers were being transmitted via the same telephone to Lucas as other people's account numbers. He didn't know any of these other people in Las Vegas. He didn't know there were other accounts being opened, or he didn't even know where the money came from, and there was absolutely no evidence produced at trial showing that Mr. Davis had to have known that the money that was transferred into his account had to have involved people other than this Rich character. The government says, well, it wouldn't have made any sense that there wasn't at least a third party involved because Rich could have just put the money in the account right in front of Mr. Davis at that time. But, okay, that's one potential way of looking at it, but there's absolutely nothing about the fact that you open an account and then you find out money that's transferred into it the next day that tells you how many of people had to have been involved in that transaction. Well, he doesn't have to know how many people does he? He has to know that there were others involved and that they were up to no good. Well, in a specific kind of no good, yes. But I'm just rebutting. So the government had argued that not only did Mr. Davis know that somebody else put the money in the account, but he had to have known it was more than Rich, that there were nefarious other people out there doing it because if there wasn't – if Rich was the only person putting money into the account, he would have done that in front of Mr. Davis. And I think that that's not a logical inference to draw from the evidence in this case, that they had to actually affirmatively show there was something more than a normal person might think that you would put the money in the account immediately in front of all of the involved parties. I mean, that's just not a reasonable inference. And I think that was the only other point I wanted to rebut. Again, I would really ask this Court to reverse the conviction in this case, and if the Court is inclined to reverse the conviction, I would encourage you to issue your opinion as quickly as possible because Mr. Davis is sitting out there, you know, with a felony conviction that he does not deserve, and he has no other prior record, you know, felony record in this case. So it's keeping him from moving on with his life. Thank you. Thank you, Counsel. The case to the target is submitted.
judges: Canby, Reinhardt, Wardlaw